UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA M. SCHALDACH, fka LINDA M. LOWRY,<br><br>Plaintiff,<br><br>v.<br><br>DIGNITY HEALTH, SHELLY NOYES, DEDRA BOUCHARD, A.C. SAECHOU, and MERCY MEDICAL GROUP,<br><br>Defendants. | No. 2:12-cv-02492-MCE-KJN<br><br>**MEMORANDUM AND ORDER** |

Through this action, Plaintiff Linda M. Schaldach ("Plaintiff") seeks redress from Defendants Dignity Health, Mercy Medical Group[1], Dedra Bouchard, Shelly Noyes, and A.C. Saechou for violations of state and federal law related to Plaintiff's termination from employment with Dignity Health in July 2011.

///

///

//

///

---

[1] Defendants state that Dignity Health Medical Foundation was erroneously sued as Mercy Medical Group.

1

Specifically, Plaintiff asserts claims for violations of the Americans with Disabilities Act ("ADA") and the Age Discrimination in Employment Act ("ADEA"), as well as state law claims for violations of California's Fair Employment and Housing Act ("FEHA"), and common law claims for fraud, wrongful termination in violation of public policy, breach of contract, and breach of the covenant of good faith and fair dealing.  Plaintiff originally filed the case in California Superior Court, County of Sacramento.  (ECF No. 1.) Defendants removed the case to federal court on October 3, 2012.  (ECF No. 1.) Presently before the Court is Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.[2]  (ECF No. 4.)  Defendants also requested that the Court take judicial notice of certain documents.[3]  (ECF No. 4-2.)  Plaintiff filed a timely opposition.  (ECF No. 6.)

For the reasons set forth below, Defendants' Motion to Dismiss is GRANTED.[4]

## BACKGROUND[5]

Plaintiff began working as a medical assistant for Defendant Dignity Health in October 1988, at a clinic located in Sacramento, California.  That clinic was operated at the time by Catholic Healthcare West.  In December 2000, Plaintiff accepted a medical assistant position with Defendant Dignity Health at a clinic located in Carmichael, California.

///

---

[2] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

[3] Because the Motion to Dismiss may be resolved without reference to the documents of which Defendants request the Court take judicial notice, the Request for Judicial Notice (ECF No. 4-2) is denied without prejudice at this time.

[4] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Cal. Local R. 78-230(g).

[5] The following recitation of facts is taken, sometimes verbatim, from Plaintiff's Complaint.  (ECF No. 1.)

That clinic was also operated by Catholic Healthcare West. In March 2004, Plaintiff submitted an ADA request for accommodation due to physical illness to Defendant Dignity Health's Human Resource Department. In March 2005, Defendant Dignity Health granted Plaintiff's request for accommodation, and Plaintiff and Defendant Dignity Health agreed that Plaintiff would transfer to a medical office receptionist position. In that position, Plaintiff would be allowed to work thirty-two hours per week in the Internal Medicine Department of the Carmichael clinic. Plaintiff transferred positions, and was thus afforded the ADA accommodation, in April 2005. The accommodation was reaffirmed in March 2011, following an updated review of Plaintiff's medical condition in February 2011.

In her new position as a medical office receptionist, Plaintiff's duties included checking patients out; assigning appointment dates and times; answering telephone calls and messages for the physicians; making physician-patient return telephone calls; making internal specialty referrals and obtaining authorizations; verifying patient insurance coverage; ordering supplies for the department; handling incoming and outgoing facsimile transmissions; and handling "walk-in" patients. Plaintiff's duties did not include checking in patients at the front desk.

Beginning in August 2010, Defendant Dedra Bouchard, an interim supervisor for the unit in which Plaintiff was employed, began an ongoing series of false disciplinary allegations against Plaintiff. These allegations were all directed at the limitations in Plaintiff's employment which had been addressed in Plaintiff's ADA accommodation. Around September or October 2010, Defendant Bouchard also began transferring younger employees to the medical clinic where Plaintiff was employed. These transfers were the result of a meeting held in 2008 with the supervisors of various clinics, including Defendant Shelly Noyes. At the 2008 meeting, then-president of Defendant Mercy Medical Group informed the supervisors that they should staff their positions with "young and cute, perky and pretty" employees in preference to the older, established employees.

In October through November 2010, Defendant Noyes compiled a list which included all employees which the management decided needed to be terminated. Plaintiff's name was on the list. According to Plaintiff, all employees on the list were medical or Family Leave Act qualified employees, who had generally been employed for long periods of time with Catholic Healthcare West and who had frequently limited or restricted their periods of employment. As these employees were terminated, younger employees filled the open positions. Many of the younger employees were children of supervisors employed at Mercy San Juan Medical Clinic. These younger employees were not disciplined for violations of workplace rules and regulations, which Plaintiff contends is favorable treatment in contrast to the discipline meted out to older employees.

On November 16, 2010, Defendant A.C. Saechou interrogated Plaintiff about an incident involving Plaintiff's then-incapacitated adult son, who was a patient of the Mercy Medical Group clinics. Defendant Saechou accused Plaintiff of accessing patient medical files in violation of the Health Insurance Portability and Accountability Act ("HIPAA")[6], and of discussing and disclosing private health information with an individual who was not entitled to know such information. Both of these accusations were grounds for discipline. As a result of this interrogation, Defendant Saechou issued a disciplinary letter on December 13, 2010. The disciplinary letter accused Plaintiff of violating HIPAA and Catholic Healthcare West policies for accessing patient records of family members. Defendant Saechou knew these accusations were false. The following day, Plaintiff contacted Defendant Saechou and requested that Defendant Saechou make a full investigation of the accusations contained in the December 13 disciplinary letter. Defendant Saechou responded that he would not investigate the disputed factual allegations. Defendant Saechou also informed Plaintiff that the HIPAA violations were a complaint from the medical provider himself, and because Plaintiff could have been summarily terminated for such violations, Plaintiff would be better served by saying nothing adverse to the content of the December 13 letter.

---

[6] The Complaint erroneously refers to the law as "HIPPA."

Nearly a year later, on November 17, 2011, Plaintiff learned that these accusations had been fabricated by Defendant Saechou as a basis for establishing a first level of discipline to have Plaintiff terminated.

In December 2010, Plaintiff applied to transfer to a position as a referral department clerk. Had Plaintiff transferred to the new position, she would have received a pay raise and a new job classification. Plaintiff was qualified for this position due to her prior training and work experience as a referral coordinator. In January 2011, Defendant Bouchard and Shelley Wilson interviewed Plaintiff for the position. At this interview, Defendant Bouchard threatened to terminate Plaintiff for any small mistake, and twice told Plaintiff that her continued employment was "simply a grievance waiting to happen." Wilson and Defendant Bouchard gave Plaintiff the impression that she was not wanted in the new position she had applied for. Shortly thereafter, a younger employee who was a child of a clinic supervisor was promoted to the position that Plaintiff had applied for and been discouraged from taking.

In June 2011, Defendant Saechou again accused Plaintiff of violating HIPAA and the Network Usage Policy. This time, the accusations were related to Plaintiff making an appointment and taking a personal message for Plaintiff's father, who was a patient of Defendant Dignity Health. When Plaintiff denied these accusations, Defendant Saechou told Plaintiff that there would be a full investigation. However, no investigation ever took place.

At some point during her employment, Plaintiff led efforts to organize a collective bargaining election, which resulted in the S.E.I.U. union becoming the exclusive union bargaining agent for the various clinics operated by Catholic Healthcare West under the name of Mercy Medical Group. Plaintiff also led efforts to obtain sufficient patient complaints documenting the unhealthy airborne environment of the common lobby shared by Internal Medicine and Family Practice. The complaints resulted in Defendant Dignity Health removing the carpet, exterminating the mold found underneath the carpet, and installing new carpet.

Plaintiff was terminated from her position on July 28, 2011. Up until the time that Plaintiff was terminated, Plaintiff's annual reviews were all above average or better. Plaintiff's termination resulted from false accusations prepared by Defendants Bouchard and Saechou. Plaintiff also contends that her termination resulted from her organizing the collective bargaining election and obtaining patient complaints about the airborne environment.

Plaintiff made a request to return to her employment, through a union grievance proceeding, which was denied by Defendant Noyes on September 27, 2011. Plaintiff alleges that as a result of her termination, she has suffered loss of earnings, loss of her employer's matching contribution to her pension plan account, loss of PTO compensation, loss of her employer's matching FICA and Medicare insurance premiums, and uninsured medical expenses.

**STANDARD**

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation."

6

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing 5 Charles Alan Wright & Arthur R. Miller, supra, at § 1202). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987).

Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

## ANALYSIS

Defendants seek dismissal of Plaintiff's fourth cause of action for retaliation in violation of FEHA, her fifth cause of action for fraud, her seventh cause of action for breach of contract, and her eighth cause of action for breach of the covenant of good faith and fair dealing. (ECF No. 4.) Defendants also contend that Plaintiff has failed to assert a claim against the individuals named in the Complaint— Defendants Noyes, Bouchard and Saechou— and seek dismissal of all eight causes of action as pled against these Defendants. (ECF No 4.)

### A.   Retaliation in Violation of FEHA

Plaintiff alleges that she was terminated in retaliation for: (1) organizing a collective bargaining election and (2) being instrumental in obtaining sufficient patient complaints documenting the unhealthy air borne environment of a common lobby." (ECF No. 1 at 17.) Defendants argue that Plaintiff has failed to allege facts demonstrating that she engaged in a protected activity under FEHA, and thus has failed to state a claim for retaliation under FEHA.

///
///
///

FEHA prohibits employers from "refusing to hire or employ . . . or [barring] or [discharging] a person from employment" or "discriminat[ing] against the person in compensation or in terms, conditions, or privileges of employment" on the basis of "race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, or sexual orientation." Cal. Gov. Code § 12940(a), (j). Section 12940(h) of the California Government Code makes it an unlawful employment practice to "discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." Doe v. City of S.F., 835 F. Supp. 2d 762, 772 (N.D. Cal. 2011). Thus, an employee may sue his or her employer for retaliating against the employee in violation of FEHA. To establish a prima facie case of retaliation under FEHA, a plaintiff must show that: "(1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal link existed between the protected activity and the adverse employment action." Leramo v. Premier Anesthesia Med. Grp., 2:09-cv-02083 LJO JTL, 2011 WL 2680837, at *16 (E.D. Cal. July 8, 2011) (citing Morgan v. Regents of Univ. of Cal., 88 Cal. App. 4th 52, 69 (2000)). "Based on these standards, [a plaintiff] must establish that she suffered an adverse employment action that was caused by a 'statutorily protected expression.'" Id. at *17 (quoting E.E.O.C. v. Crown Zellerbach Corp., 720 F.2d 1008, 1012 (9th Cir. 1983)). "The 'protected activity' in a retaliation case refers to an employee's statement that is 'opposed to an unlawful employment practice [under FEHA].'" Id. (quoting E.E.O.C., 720 F.2d at 1012); see also Cal. Gov. Code § 12940(h).

In this case, Plaintiff does not allege that she opposed an employment practice that is unlawful under FEHA.

///
///
///

9

Rather, she alleges that she engaged in the activity of encouraging a collective bargaining election that resulted in the SEIU union becoming the exclusive bargaining agent for various clinics operated by Defendant Dignity Health, and by obtaining patient complaints documenting the unhealthy airborne environment in a common lobby. There is no case law or language in FEHA suggesting that these activities are "protected activities" under FEHA, or that FEHA is designed to protect employees from engaging in union-related activities or raising complaints about safety issues in the workplace. Rather, FEHA protects employees from retaliation by their employer when the employee complains of discrimination or harassment of the sort that violates FEHA. See Cal. Gov. Code § 12940(h).

As such, Plaintiff has failed to state a claim for retaliation in violation of FEHA. Defendant's Motion to Dismiss Plaintiff's fourth cause of action is therefore granted with leave to amend.

**B.  Fraud**

"To establish a cause of action for fraud, a plaintiff must allege the following elements: misrepresentation, knowledge of falsity, intent to induce reliance, justifiable reliance, and resulting damages." Conrad v. Bank of Am., 45 Cal. App. 4th 133, 156 (1996). In Hunter v. Up-Right, Inc., the California Supreme Court held that "wrongful termination of employment ordinarily does not give rise to a cause of action for fraud or deceit, even if some misrepresentation is made in the course of the employee's dismissal." 6 Cal. 4th 1174, 1178 (1993). In that case, the plaintiff was falsely told by his supervisor that the corporation had decided to eliminate his position. Id. at 1179. On the basis of that representation, the plaintiff signed a document setting forth his resignation. Id. The Court explained that the employer had "simply employed a falsehood to do what it otherwise could have accomplished directly." Id. at 1184.

///

Thus, the Court found that plaintiff was unable to establish all the elements of a fraud claim, because plaintiff "did not rely to his detriment on the misrepresentation." Id. The Court thus concluded that an employee may maintain an action for fraud "only if the plaintiff can establish all of the elements of fraud with respect to a misrepresentation that is separate from the termination of the employee contract, i.e., when the plaintiff's fraud damages cannot be said to result from the termination itself." Id.

In Lazar v. Superior Court, the defendant employer asked the plaintiff to leave his employment in New York and work instead for the defendant in Los Angeles. 12 Cal. 4th 631, 635 (1996). When the plaintiff expressed concern about relocating, the defendant falsely told the plaintiff his job in Los Angeles would be secure and would involve significant pay increases. Id. at 635-36. Shortly after the plaintiff relocated, the defendant fired the plaintiff. Id. Plaintiff was thus "burdened with payments on Southern California real estate he [could] no longer afford," in addition to losing past and future income and employment benefits. Id. at 637. On these facts, the California Supreme Court held that the plaintiff had established the elements of fraud. Id. at 643. The Court stated that it had "expressly left open in Hunter the possibility 'that a misrepresentation not aimed at effecting termination of employment, but instead designed to induce the employee to alter detrimentally his or her position in some other respect, might form a basis for a valid fraud claim even in the context of wrongful termination.'" Id. at 640 (quoting Hunter, 6 Cal. 4th at 1185). The Court explained that Hunter "did not call into question generally the viability of traditional fraud remedies whenever they are sought by a terminated employee," id. at 641, but established that a plaintiff fails to state a claim for fraud if "the element of detrimental reliance [is] absent," id. at 643. In addition, the Court clarified that Hunter does not allow for recovery for fraud "where the result of the employer's misrepresentation is indistinguishable from an ordinary constructive wrongful termination." Id. at 643.

///

///

11

Thus, together, "Hunter and Lazar reveal employees can maintain a cause of action for fraud against their employer only if they allege all of the elements of such a claim, including detrimental reliance, and if they allege damages distinct from the termination itself." Maffei v. Allstate Cal. Ins. Co., 412 F. Supp. 2d 1049, 1055 (E.D. Cal. 2006). In short, "[n]o independent fraud claim arises from a misrepresentation aimed at termination of employment." Jones v. Bayer Healthcare LLC, 08-2219 SC, 2009 WL 1186891, at *3 (N.D. Cal. May 4, 2009) (citing Hunter, 6 Cal. 4th at 1185).

In this case, Plaintiff's fraud claim arises from an alleged misrepresentation aimed at terminating Plaintiff's employment. (ECF No. 1 at 21-22.) Specifically, Plaintiff alleges that she relied on Defendant Saechou's representations that she should not pursue the December 13 disciplinary letter, and also relied on Defendant Saechou's representations that there would be an investigation regarding the June 2011 allegations against Plaintiff. (ECF No. 1 at 21.) Plaintiff alleges that "as a direct and proximate consequence of the actions, lies, and false representations made by Defendant A.C. Saechou, Plaintiff's employment was terminated . . . ." (ECF No. 1 at 22.) Plaintiff alleges no damages distinct from the termination itself. (See ECF No. 1 at 22.) Thus, the fraud Plaintiff alleges "arises from a misrepresentation aimed at termination of employment." Jones, 2009 WL 1186891, at *3 (citing Hunter, 6 Cal. 4th at 1185).

As such, Plaintiff has failed to state a claim for fraud upon which relief can be granted, and Defendants' Motion to Dismiss is granted with leave to amend as to this cause of action.

**C.     Breach of Contract**

Next, Defendants contend that section 301 of the Labor Management Relations Act, 29 U.S.C. § 195, preempts Plaintiff's claim for breach of contract. Defendants also argue that Plaintiff cannot bring a breach of contract claim because Plaintiff failed to follow the mandatory arbitration procedure called for under the contract.

12

Section 301(a) provides federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). "Section 301 creates a federal cause of action for breach of collective bargaining agreements . . . even if brought in state court. Applying federal law to these cases ensures a uniform interpretation of labor contract terms, a goal the Supreme Court had described as particularly compelling." Miller v. AT&T Network Sys., 850 F.2d 543, 545 (9th Cir. 1988). To achieve this goal, when a "right is created by state law . . . [but the application of state law] requires the interpretation of a collective-bargaining agreement," the state law claim is preempted by section 301. Hayden v. Reickerd, 957 F.2d 1507, 1509 (9th Cir. 1992) (quoting Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 413 (1988)). "The preemptive force of section 301 is so powerful as to displace entirely any state claim based on a collective bargaining agreement and any state claim whose outcome depends on analysis of the terms of the agreement." Young v. Anthony's Fish Grottos, Inc., 830 F.2d 993, 997 (9th Cir. 1987). However, while "the scope of section 301 is 'substantial,' [it is] not infinite. 'If a court can uphold state rights without interpreting the [collective bargaining agreement . . . allowing suit based on the state rights does not undermine the purpose of section 301 preemption." Hayden, 957 F.2d at 1509 (quoting Miller, 850 F.2d at 545-46).

In this case, Plaintiff specifically alleges that in 2010 and 2011, Plaintiff was a member of the SEIU. (ECF No. 1 at 24.) Plaintiff also alleges that the union contract in effect between May 1, 2008 and April 30, 2012, states that "the employer may only discipline or terminate an employee for just cause." (ECF No. 1 at 24.) Finally, Plaintiff alleges that the contract provides procedural safeguards for employees whose conduct warrants discipline. (ECF No. 1 at 25.) Plaintiff specifically alleges that Defendants violated these contractual provisions in terminating Plaintiff. (ECF No. 1 at 25.) Plaintiff's claim for breach of contract is therefore based on the collective bargaining agreement.

///

Thus, determining whether Defendants are liable to Plaintiff for breaching the terms of the contract requires analysis of the terms of the collective bargaining agreement. See Kirton v. Summit Med. Ctr., 982 F. Supp. 1381, 1386 (N.D. Cal. 1997) ("The CBA must be interpreted to determine whether Defendants breached the CBA by discharging Plaintiff without good cause . . . ."). Accordingly, Plaintiff's claim is preempted by section 301.

While Plaintiff contends that "lying about circumstances allegedly used as discipline, and subsequently for termination, does require any one to interpret anything" in the contract's "just cause" provision (ECF No. 6 at 15), this argument is unpersuasive. Plaintiff's citation to Espinal v. Nw. Airlines, 90 F.3d 1452 (9th Cir. 1996), is likewise unavailing. In that case, the Ninth Circuit clearly states: "[w]here a plaintiff contends that an employer's actions violated rights protected by the [collective bargaining agreement]," the claim is subject to preemption. 90 F.3d at 1456. Espinal does state that "where a plaintiff contends that an employer's actions violated a state-law obligation, wholly independent from its obligations under the [collective bargaining agreement], there is no preemption." Id. However, in the present case, Plaintiff does not allege that Defendants' actions violated an obligation independent from Defendants' obligations under the collective bargaining agreement. Rather, Plaintiff specifically alleges that Defendant's conduct violated the contract—that is, the collective bargaining agreement. (See ECF No. 1 at 24-25.)

Cramer v. Consolidated Freightways, Inc., 255 F.3d 683 (9th Cir. 2001), also provides no support for Plaintiff's position. In Cramer, the Ninth Circuit held that an employee's state law claims against an employer is not preempted by section 301 if the claim is unrelated to the terms of the collective bargaining agreement. 255 F.3d at 689. "If the plaintiff's claim cannot be resolved without interpreting the applicable [collective bargaining agreement]—as, for example, in Allis-Chalmers, where the suit involved an employer's alleged failure to comport with its contractually established duties—it is preempted."

Id. at 691 (citing Allis-Chalmers Corp. v. Lueck, 471 U.S. 202 (1985)).  Such is precisely the case here—as set forth above, Plaintiff's claim for breach of contract cannot be resolved without interpreting the "just cause" provision of the collective bargaining agreement.  See supra.

Thus, section 301 clearly preempts Plaintiff's breach of contract claim, and Plaintiff has therefore failed to state a claim upon which relief can be granted.[7]  See supra.  Defendants' Motion to Dismiss Plaintiff's seventh cause of action is therefore granted with leave to amend.

### D.  Breach of the Covenant of Good Faith and Fair Dealing

The Ninth Circuit has held that claims for breach of an implied covenant are preempted under section 301 where the terms of the collective bargaining agreement encompass the same rights and protections that are alleged to arise from the implied covenant.  See Chmiel v. Beverly Wilshire Hotel Co., 873 F.2d 1283, 1286 (9th Cir. 1989) (finding covenant of good faith and fair dealing claim preempted by collective bargaining agreement containing job security term); Jackson v. S. Cal. Gas Co., 881 F.2d 638, 644–45 (9th Cir. 1989) (same).  "Claims for breach of the implied covenant of good faith and fair dealing are designed to protect the job security of employees who at common law could be fired at will."  Kirton, 982 F. Supp. at 1386 n.1 (quoting Newberry v. Pac. Racing Ass'n, 854 F.2d 1142, 1147 (9th Cir. 1988)).  Thus, "[f]or employees covered by a collective bargaining agreement that expressly includes job security and good cause for termination provisions, the express terms prevail and section 301 preempts any implied covenant claim."  Reagans v. AlliedBarton Sec. Servs., LLC, 12-cv-02190 YGR, 2012 WL 2976766 (N.D. Cal. July 19, 2012); see also Kirton, 982 F. Supp. at 1386 n.1 (citing Newberry, 854 F.2d at 1147).

---

[7] Because the breach of contract claim is preempted by section 301, the Court declines at this time to address whether Plaintiff's alleged failure to follow the mandatory arbitration agreement under the contract also prevents Plaintiff from stating a claim for breach of contract.

Specifically, a collective bargaining agreement that "permits discharge for just cause only and provides a grievance procedure to safeguard that right . . . provides comparable job security" such that a claim for breach of the implied covenant of good faith and fair dealing is preempted by section 301. <u>Kirton</u>, 982 F. Supp. at 1390 n.1.

Here, Plaintiff's fifth cause of action for breach of the implied covenant of good faith and fair dealing concerns matters that are directly addressed by the collective bargaining agreement: termination and good cause. (<u>See</u> ECF No. 1 at 24-27.) Plaintiff specifically alleges that the collective bargaining agreement covers employee discipline and discharge, that the collective bargaining agreement permitted discharge only for just cause (ECF No. 1 at 24), and that there were procedural safeguards in place (ECF No. 1 at 25). Thus, the terms of the collective bargaining agreement provide comparable job security terms to that of a claim for breach of the covenant of good faith and fair dealing. <u>Cf.</u> <u>Kirton</u>, 982 F. Supp. at 1390 n.1. Plaintiff's claim for breach of the implied covenant is therefore preempted by section 301.

As such, Plaintiff has failed to state a claim upon which relief can be granted, and Defendants' Motion to Dismiss this cause of action is granted with leave to amend.

**E.   Claims against Individual Defendants**

     **1.   First, Second, Third, Fourth, and Sixth Causes of Action**

Defendants contend that Plaintiff's first, second, third, fourth and sixth causes of action may not properly be asserted against individuals. (ECF No. 4 at 20.) Plaintiff agrees that these causes of action cannot be pled against an individual, and thus does not oppose dismissal of these causes of action against Defendants Noyes, Bouchard, and Saechou. (ECF No. 6 at 13.) Accordingly, Defendants' Motion to Dismiss Plaintiff's first, second, third, fourth, and sixth causes of action is granted with leave to amend as to the individual defendants.

16

### 2. Fifth Cause of Action

Defendants also assert that Plaintiff's fifth claim for fraud fails against the individual defendants because the claim is not cognizable under California law. (ECF No. 4 at 20.) As stated above, Plaintiff has failed to state a claim for fraud against both the entity Defendants and the individual Defendants. See supra. Accordingly, Defendants' Motion to Dismiss Plaintiff's fifth cause of action for fraud is granted with leave to amend as to Defendants Noyes, Bouchard and Saechou.

### 3. Breach of Contract and the Covenant of Good Faith and Fair Dealing

Finally, Defendants argue that Plaintiff's seventh and eighth claims for breach of contract and breach of the covenant of good faith and fair dealing cannot be asserted against these individual defendants because they are not parties to the contract at issue. (ECF No. 4 at 22.) Plaintiff agrees that these causes of action do not state facts sufficient to establish personal liability for the three individual defendants, and requests that the Court dismiss these causes of action without prejudice, should discovery provide information that would allow Plaintiff to state a cause of action for breach of contract or breach of the covenant of good faith and fair dealing against one or more of the individual defendants. (ECF No. 6 at 13-14.) Accordingly, Defendants' Motion to Dismiss Plaintiff's seventh and eighth causes of action against the individual Defendants is granted with leave to amend.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss Plaintiff's fourth, fifth, seventh and eighth causes of action is GRANTED WITH LEAVE TO AMEND as to all Defendants.

Defendants' Motion to Dismiss Plaintiff's first, second, third and sixth causes of action is also GRANTED WITH LEAVE TO AMEND as to the individual Defendants.

IT IS SO ORDERED.

Dated:  December 20, 2012

MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT