1

2

3

4

5

6

7

8                             UNITED STATES DISTRICT COURT

9                             EASTERN DISTRICT OF CALIFORNIA

10

11  | LINDA M. SCHALDACH, fka LINDA M. | No.  2:12-cv-02492-MCE-KJN |
    | LOWRY, | |

12
                 Plaintiff,

13
           v.

14
    DIGNITY HEALTH, SHELLY NOYES,
15  DEDRA BOUCHARD, A.C. SAECHOU,        **MEMORANDUM AND ORDER**
    and MERCY MEDICAL GROUP,
16
                 Defendants.
17

18

19         Through this action, Plaintiff Linda M. Schaldach ("Plaintiff") seeks redress from

20  Defendants Dignity Health, Mercy Medical Group,[1] Dedra Bouchard, Shelly Noyes and

21  A.C. Saechou for violations of state and federal law related to Plaintiff's termination from

22  employment with Dignity Health in July 2011.

23  ///

24  ///

25  ///

26  ///

27  _____

28       [1] Defendants state that Dignity Health Medical Foundation was erroneously sued as Mercy
    Medical Group.  (Defs.' Mot. Dismiss 1, ECF No. 19.)

                                          1

1   Specifically, Plaintiff asserts claims for violations of the Americans with Disabilities Act

2   ("ADA") and the Age Discrimination in Employment Act ("ADEA"), as well as state law

3   claims for violations of California's Fair Employment and Housing Act ("FEHA"), the

4   California Labor Code, the California Civil Code and common law claims for fraud,

5   breach of contract and breach of the covenant of good faith and fair dealing.

6       Plaintiff originally filed the case in California Superior Court, County of

7   Sacramento.  (Notice of Removal, ECF No. 1.)  Defendants removed the case to federal

8   court on October 3, 2012.  (Id.)  Presently before the Court is Defendants' Motion to

9   Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim

10  upon which relief can be granted.[2]  (Defs.' Mot. Dismiss, ECF No. 19.)  Plaintiff filed a

11  timely opposition.  (Pl.'s Opp'n, ECF No. 20.)

12      For the reasons set forth below, Defendants' Motion to Dismiss is GRANTED.[3]

14  **BACKGROUND[4]**

16      Plaintiff began working as a medical assistant for Defendant Dignity Health in

17  October 1988 at a clinic located in Sacramento, California.  That clinic was operated by

18  Catholic Healthcare West.  In December 2000, Plaintiff accepted a medical assistant

19  position with Defendant Dignity Health at a clinic located in Carmichael, California.  That

20  clinic was also operated by Catholic Healthcare West.  In March 2004, Plaintiff submitted

21  an ADA request for accommodation due to physical illness to Defendant Dignity Health's

22  Human Resources Department.

23  ///

---

25  [2] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

26  [3] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Cal. Local R. 78-230(g).

28  [4] The following recitation of facts is taken, sometimes verbatim, from Plaintiff's First Amended Complaint.  (Pl.'s 1st Am. Compl., ECF No. 18.)

1   In March 2005, Defendant Dignity Health granted Plaintiff's request for accommodation,

2   and Plaintiff and Defendant Dignity Health agreed that Plaintiff would transfer to a

3   medical office receptionist position.  In that position, Plaintiff would be allowed to work

4   thirty-two hours per week in the Internal Medicine Department of the Carmichael clinic.

5   Plaintiff transferred positions and was thus afforded the ADA accommodation in April

6   2005.  The accommodation was reaffirmed in March 2011, following an updated review

7   of Plaintiff's medical condition in February 2011.

8          In her new position as a medical office receptionist, Plaintiff's duties included

9   checking patients out; assigning appointment dates and times; answering telephone

10  calls and messages for the physicians; making physician-patient return telephone calls;

11  making internal specialty referrals and obtaining authorizations; verifying patient

12  insurance coverage; ordering supplies for the department; handling incoming and

13  outgoing facsimile transmissions; and handling "walk-in" patients.  Plaintiff's duties did

14  not include checking in patients at the front desk.

15         Beginning in August 2010, Defendant Dedra Bouchard, an interim supervisor for

16  the unit in which Plaintiff was employed, began an ongoing series of false disciplinary

17  allegations against Plaintiff.  These allegations were all directed at the limitations in

18  Plaintiff's employment which had been addressed in Plaintiff's ADA accommodation.

19  Around September or October 2010, Defendant Bouchard also began transferring

20  younger employees to the medical clinic where Plaintiff was employed.  These transfers

21  were the result of a meeting held in 2008 with the supervisors of various clinics, including

22  Defendant Shelly Noyes.  At the 2008 meeting, then-president of Defendant Mercy

23  Medical Group informed the supervisors that they should staff their positions with "young

24  and cute, perky and pretty" employees in preference to the older, established

25  employees.  In October through November 2010, Defendant Noyes compiled a list which

26  included all employees which the management decided needed to be terminated.

27  Plaintiff's name was on the list.

28  ///

1   According to Plaintiff, all employees on the list were medical or Family Leave Act

2   qualified employees, who had generally been employed for long periods of time with

3   Catholic Healthcare West and who had frequently limited or restricted their periods of

4   employment.  As these employees were terminated, younger employees filled the open

5   positions.  Many of the younger employees were children of supervisors employed at

6   Mercy San Juan Medical Clinic.  These younger employees were not disciplined for

7   violations of workplace rules and regulations, which Plaintiff contends is partial treatment

8   in contrast to the discipline meted out to older employees.

9          On November 16, 2010, Defendant A.C. Saechou interrogated Plaintiff about an

10   incident involving Plaintiff's then-incapacitated adult son, who was a patient of the Mercy

11   Medical Group clinics.  Defendant Saechou accused Plaintiff of accessing patient

12   medical files in violation of the Health Insurance Portability and Accountability Act

13   ("HIPAA") and of discussing and disclosing private health information with an individual

14   who was not entitled to know such information.  Both of these accusations were grounds

15   for discipline.  As a result of this interrogation, Defendant Saechou issued a disciplinary

16   letter on December 13, 2010.  The disciplinary letter accused Plaintiff of violating HIPAA

17   and Catholic Healthcare West policies for accessing patient records of family members.

18   Defendant Saechou knew these accusations were false.  The following day, Plaintiff

19   contacted Defendant Saechou and requested that Defendant Saechou make a full

20   investigation of the accusations contained in the December 13 disciplinary letter.

21   Defendant Saechou responded that he would not investigate the disputed factual

22   allegations.  Defendant Saechou also informed Plaintiff that the HIPAA violations were a

23   complaint from the medical provider himself, and because Plaintiff could have been

24   summarily terminated for such violations, Plaintiff would be better served by saying

25   nothing adverse to the content of the December 13 letter.  Nearly a year later, on

26   November 17, 2011, Plaintiff learned that these accusations had been fabricated by

27   Defendant Saechou as a basis for establishing a first level of discipline to have Plaintiff

28   terminated.

1    In December 2010, Plaintiff applied to transfer to a position as a referral

2  department clerk.  Had Plaintiff transferred to the new position, she would have received

3  a pay raise and a new job classification.  Plaintiff was qualified for this position due to her

4  prior training and work experience as a referral coordinator.  In January 2011, Defendant

5  Bouchard and Shelley Wilson interviewed Plaintiff for the position.  At this interview,

6  Defendant Bouchard threatened to terminate Plaintiff for any small mistake, and twice

7  told Plaintiff that her continued employment was "simply a grievance waiting to happen."

8  Wilson and Defendant Bouchard gave Plaintiff the impression that she was not wanted

9  in the new position she had applied for.  Shortly thereafter, a younger employee who

10  was a child of a clinic supervisor was promoted to the position that Plaintiff had applied

11  for and been discouraged from taking.

12    In June 2011, Defendant Saechou again accused Plaintiff of violating HIPAA and

13  the Network Usage Policy.  This time, the accusations were related to Plaintiff making an

14  appointment and taking a personal message for Plaintiff's father, who was a patient of

15  Defendant Dignity Health.  When Plaintiff denied these accusations, Defendant Saechou

16  told Plaintiff that there would be a full investigation.  However, no investigation ever took

17  place.

18    At some point during her employment, Plaintiff led efforts to organize a collective

19  bargaining election, which resulted in the S.E.I.U. union becoming the exclusive union

20  bargaining agent for the various clinics operated by Catholic Healthcare West under the

21  name of Mercy Medical Group.  Plaintiff also led efforts to obtain sufficient patient

22  complaints documenting the unhealthy airborne environment of the common lobby

23  shared by Internal Medicine and Family Practice.  The complaints resulted in Defendant

24  Dignity Health removing the carpet, exterminating the mold found underneath the carpet,

25  and installing new carpet.

26    Plaintiff was terminated from her position on July 28, 2011.  Up until the time that

27  Plaintiff was terminated, Plaintiff's annual reviews were all above average or better.

28  ///

1  Plaintiff's termination resulted from false accusations prepared by Defendants Bouchard

2  and Saechou.  Plaintiff also contends that her termination resulted from her organizing

3  the collective bargaining election and obtaining patient complaints about the airborne

4  environment.

5         Plaintiff made a request to return to her employment, through a union grievance

6  proceeding, which was denied by Defendant Noyes on September 27, 2011.  Plaintiff

7  alleges that as a result of her termination, she has suffered loss of earnings, loss of her

8  employer's matching contribution to her pension plan account, loss of PTO

9  compensation, loss of her employer's matching FICA and Medicare insurance premiums

10  and uninsured medical expenses.

11

12                                    **STANDARD**

13

14         On a motion to dismiss for failure to state a claim under Federal Rule of Civil

15  Procedure 12(b)(6), all allegations of material fact must be accepted as true and

16  construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins.

17  Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and plain

18  statement of the claim showing that the pleader is entitled to relief" in order to "give the

19  defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell

20  Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41,

21  47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require

22  detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of

23  his entitlement to relief requires more than labels and conclusions, and a formulaic

24  recitation of the elements of a cause of action will not do."  Id. (internal citations and

25  quotations omitted).  A court is not required to accept as true a "legal conclusion

26  couched as a factual allegation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009)

27  (quoting Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a

28  right to relief above the speculative level."

1   Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal

2   Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain

3   something more than "a statement of facts that merely creates a suspicion [of] a legally

4   cognizable right of action.")).

5        Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket

6   assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3 (internal citations and

7   quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard

8   to see how a claimant could satisfy the requirements of providing not only 'fair notice' of

9   the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing 5 Charles

10  Alan Wright & Arthur R. Miller, supra, at § 1202).  A pleading must contain "only enough

11  facts to state a claim to relief that is plausible on its face." Id. at 570.  If the "plaintiffs . . .

12  have not nudged their claims across the line from conceivable to plausible, their

13  complaint must be dismissed." Id.  However, "[a] well-pleaded complaint may proceed

14  even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a

15  recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S.

16  232, 236 (1974)).

17        A court granting a motion to dismiss a complaint must then decide whether to

18  grant leave to amend.  Leave to amend should be "freely given" where there is no

19  "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice

20  to the opposing party by virtue of allowance of the amendment, [or] futility of the

21  amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.

22  Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to

23  be considered when deciding whether to grant leave to amend).  Not all of these factors

24  merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . .

25  carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,

26  185 (9th Cir. 1987).  Dismissal without leave to amend is proper only if it is clear that "the

27  complaint could not be saved by any amendment."

28  ///

7

1    Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re

2    Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co.,

3    866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment

4    of the complaint . . . constitutes an exercise in futility . . . .")).

5

6                                              **ANALYSIS**

7

8            Defendants seek dismissal of Plaintiff's fifth cause of action for wrongful

9    termination in violation of California Labor Code sections 6310-6312, her sixth cause of

10   action for fraud, her seventh cause of action for harassment in violation of California Civil

11   Code section 51.7, her eighth cause of action for violation of California Civil Code

12   section 52.1, as well as her ninth and tenth causes of action for breach of contract, and

13   her eleventh cause of action for breach of the covenant of good faith and fair dealing.

14   (ECF No. 19.)  However, Defendants do not seek dismissal of Plaintiff's first through

15   fourth causes of action.

16

17       **A.    Wrongful Termination in Violation of California Labor Code sections
                  6310-6312**
18

19           Section 6310 prohibits discharge or discrimination against an employee who

20   "[m]ade any oral or written complaint to the division [of Labor Law Enforcement of the

21   California Department of Industrial Relations], other governmental agencies having

22   statutory responsibility for or assisting the division with reference to employee safety or

23   health, his or her employer, or his or her representative."  Cal. Lab. Code § 6310.  An

24   employer violates section 6311 when an employee is discharged for refusing to work in

25   an environment where a Labor Code violation (or violation of a safety or health standard)

26   would create a real and apparent hazard to the employee or her fellow employees.  Cal.

27   Lab. Code § 6311.

28   ///

                                                    8

1  Section 6312 provides: "Any employee who believes that he or she has been discharged

2  or otherwise discriminated against by any person in violation of Section 6310 or 6311

3  may file a complaint with the Labor Commissioner pursuant to Section 98.7."  Cal. Lab.

4  Code § 6312.

5      Plaintiff alleges that she was instrumental in obtaining sufficient complaints

6  documenting the unhealthy airborne environment of the common lobby at the MMG

7  Clinic.  Plaintiff has not alleged that she made any oral or written complaint to a

8  government agency, instituted or caused to be instituted any proceeding relating to her

9  rights, or participated in an OSHA committee.  Thus, Plaintiff has not alleged facts

10  showing that she is entitled to relief under section 6310.  Plaintiff has also failed to allege

11  that she refused to work in an environment where there were health and safety violations

12  that created real and apparent hazards to her or her fellow employees, and thus she is

13  not entitled to relief under section 6311.

14      Accordingly, Plaintiff has failed to state a claim for relief pursuant to California

15  Labor Code sections 6310-6312, and Defendants' motion to dismiss this cause of action

16  is granted.

17

18      **B.   Fraud**

19

20      The Court previously dismissed Plaintiff's claim for fraud.  (ECF No. 12.)  While

21  Plaintiff's First Amended Complaint includes additional allegations regarding Defendants'

22  allegedly fraudulent conduct, these allegations are not sufficient to change the Court's

23  analysis of Plaintiff's claim for fraud.  The fact remains that Plaintiff's claim for fraud

24  cannot be separated from the termination of Plaintiff's employment.  See infra.

25      "To establish a cause of action for fraud, a plaintiff must allege the following

26  elements: misrepresentation, knowledge of falsity, intent to induce reliance, justifiable

27  reliance, and resulting damages."  Conrad v. Bank of Am., 45 Cal. App. 4th 133, 156

28  (1996).

In <u>Hunter v. Up-Right, Inc.</u>, the California Supreme Court held that "wrongful termination of employment ordinarily does not give rise to a cause of action for fraud or deceit, even if some misrepresentation is made in the course of the employee's dismissal." 6 Cal. 4th 1174, 1178 (1993). In that case, the plaintiff was falsely told by his supervisor that the corporation had decided to eliminate his position. <u>Id.</u> at 1179. On the basis of that representation, the plaintiff signed a document setting forth his resignation. <u>Id.</u> The Court explained that the employer had "simply employed a falsehood to do what it otherwise could have accomplished directly." <u>Id.</u> at 1184. Thus, the Court found that plaintiff was unable to establish all the elements of a fraud claim, because plaintiff "did not rely to his detriment on the misrepresentation." <u>Id.</u> The Court thus concluded that an employee may maintain an action for fraud "only if the plaintiff can establish all of the elements of fraud with respect to a misrepresentation that is separate from the termination of the employee contract, i.e., when the plaintiff's fraud damages cannot be said to result from the termination itself." <u>Id.</u>

In <u>Lazar v. Superior Court</u>, the defendant employer asked the plaintiff to leave his employment in New York and work instead for the defendant in Los Angeles. 12 Cal. 4th 631, 635 (1996). When the plaintiff expressed concern about relocating, the defendant falsely told the plaintiff his job in Los Angeles would be secure and would involve significant pay increases. <u>Id.</u> at 635-36. Shortly after the plaintiff relocated, the defendant fired the plaintiff. <u>Id.</u> Plaintiff was thus "burdened with payments on Southern California real estate he [could] no longer afford," in addition to losing past and future income and employment benefits. <u>Id.</u> at 637. On these facts, the California Supreme Court held that the plaintiff had established the elements of fraud. <u>Id.</u> at 643. The court stated that it had "expressly left open in <u>Hunter</u> the possibility 'that a misrepresentation not aimed at effecting termination of employment, but instead designed to induce the employee to alter detrimentally his or her position in some other respect, might form a basis for a valid fraud claim even in the context of wrongful termination.'" <u>Id.</u> at 640 (quoting <u>Hunter</u>, 6 Cal. 4th at 1185).

1    The court explained that <u>Hunter</u> "did not call into question generally the viability of

2    traditional fraud remedies whenever they are sought by a terminated employee," <u>id.</u> at

3    641, but established that a plaintiff fails to state a claim for fraud if "the element of

4    detrimental reliance [is] absent," <u>id.</u> at 643.  In addition, the court clarified that <u>Hunter</u>

5    does not allow for recovery for fraud "where the result of the employer's

6    misrepresentation is indistinguishable from an ordinary constructive wrongful

7    termination."  <u>Id.</u> at 643.

8         Thus, together, "<u>Hunter</u> and <u>Lazar</u> reveal employees can maintain a cause of

9    action for fraud against their employer only if they allege all of the elements of such a

10   claim, including detrimental reliance, and if they allege damages distinct from the

11   termination itself."  <u>Maffei v. Allstate Cal. Ins. Co.</u>, 412 F. Supp. 2d 1049, 1055 (E.D. Cal.

12   2006).  In short, "[n]o independent fraud claim arises from a misrepresentation aimed at

13   termination of employment."  <u>Jones v. Bayer Healthcare LLC</u>, 08-2219 SC, 2009 WL

14   1186891, at *3 (N.D. Cal. May 4, 2009) (citing <u>Hunter</u>, 6 Cal. 4th at 1185).

15        In this case, Plaintiff's fraud claim arises from an alleged misrepresentation aimed

16   at terminating Plaintiff's employment.  (ECF No. 18 at 18, 19.)  Specifically, Plaintiff

17   alleges that she relied on Defendant Saechou's representations that she should not

18   pursue the December 13 disciplinary letter, and also relied on Defendant Saechou's

19   representations that there would be an investigation regarding the June 2011 allegations

20   against Plaintiff.  (ECF No. 18 at 21.)  Plaintiff alleges that "as a direct and proximate

21   result of the events as described herein . . . Defendant A.C. Saechou stated to Plaintiff

22   that Plaintiff was then and there terminated from her employment . . . ."  (ECF No. 18 at

23   22.)  Plaintiff alleges no damages distinct from the termination itself.  (<u>See</u> ECF No. 18 at

24   7, 22.)  Thus, the fraud Plaintiff alleges "arises from a misrepresentation aimed at

25   termination of employment."  <u>Jones</u>, 2009 WL 1186891, at *3 (citing <u>Hunter</u>, 6 Cal. 4th at

26   1185).

27        As such, Plaintiff has failed to state a claim for fraud upon which relief can be

28   granted, and Defendants' motion to dismiss this cause of action is granted.

1     **C.     Violation of California Civil Code section 51.7**

2

3     Plaintiff's seventh cause of action is alleged only against Defendant Bouchard.

4     California Labor Code section 51.7 provides:

5           (a) All persons within the jurisdiction of this state have the
            right to be free from any violence, or intimidation by threat of
6           violence, committed against their persons or property
            because of political affiliation, or on account of any
7           characteristic listed or defined in subdivision (b) or (e) of
            Section 51, or position in a labor dispute, or because another
8           person perceives them to have one or more of those
            characteristics. The identification in this subdivision of
9           particular bases of discrimination is illustrative rather than
            restrictive."
10

11    The characteristics listed in subsection (b) are "sex, race, color, religion, ancestry,

12    national origin, disability, medical condition, genetic information, marital status, or sexual

13    orientation."  Cal. Civ. Code § 51.  Thus, California Civil Code section 51.7 creates a civil

14    cause of action for acts of violence or intimidation based on the above specified

15    characteristics.  California Civil Code section 52(b) also outlines penalties for section

16    51.7(a).

17    A claim for a violation of section 51.7 claim requires that the plaintiff show: "(1) the

18    defendant threatened or committed violent acts against the plaintiff; (2) the defendant

19    was motivated by his perception of plaintiff's protected characteristic; (3) the plaintiff was

20    harmed; and (4) the defendant's conduct was a substantial factor in causing the

21    plaintiff's harm.  <u>Knapps v. City of Oakland</u>, 647 F. Supp. 2d 1129, 1167 (N.D. Cal.

22    2009).

23    Plaintiff's First Amended Complaint includes no allegations that Defendant

24    Bouchard threatened Plaintiff with violent acts or committed violent acts against Plaintiff.

25    ///

26    ///

27    ///

28    ///

1    Plaintiff alleges that Defendant Bouchard's actions "are within one or more of the

2    prohibited grounds therefore as specified within the act," and alleges that Defendant

3    Bouchard "in her capacity as interim supervisor for the unit in which Plaintiff was

4    employed, commenced an ongoing series of false disciplinary allegations as against

5    Plaintiff, each of which was direct at the limitations in Plaintiff's employment which had

6    been addressed in Plaintiff's ADA accommodation."  (ECF No. 18 at 8.)  However,

7    "harassing" Plaintiff by making false disciplinary allegations simply does not amount to

8    threatening or committing a violent act.

9          Accordingly, Plaintiff has failed to state a claim pursuant to California Civil Code

10   § 51.7.  Defendants' motion to dismiss this cause of action is granted.

11

12          **D.      Violation of California Civil Code section 52.1**

13

14          Section 52.1 of the California Civil Code, also called the Bane Act, provides a

15   private cause of action for damages and injunctive relief for interference with civil rights.

16   Subsection (a) provides, in relevant part:

17                 If a person or persons, whether or not acting under color of
                   law, interferes by threats, intimidation, or coercion, or
18                 attempts to interfere by threats, intimidation, or coercion, with
                   the exercise or enjoyment by any individual or individuals of
19                 rights secured by the Constitution or laws of the United
                   States, or of the rights secured by the Constitution or laws of
20                 this state, the Attorney General, or any district attorney or city
                   attorney may bring a civil action for injunctive and other
21                 appropriate equitable relief in the name of the people of the
                   State of California, in order to protect the peaceable exercise
22                 or enjoyment of the right or rights secured.

23   Cal. Civ. Code § 52.1.  Subsection (b) provides that

24                 any individual whose exercise or enjoyment of rights secured
                   by the Constitution or laws of the United States, or of rights
25                 secured by the Constitution of laws of this state, has been
                   interfered with, or attempted to be interfered with, as
26                 described in subdivision (a), may institute and prosecute in
                   his or her own name and on his or her own behalf a civil
27                 action for damages . . . .

28   Cal. Civ. Code § 52.1(b).

1  In short, "section 52.1 creates a private right of action when 'a person interferes by

2  threats, intimidation, or coercion . . . with the exercise of enjoyment . . . of rights.'"

3  Martinez v. Extra Space Storage, Inc., No. C 13-00319 WHA, 2013 WL 1390412, at *3

4  (N.D. Cal. Apr. 4, 2013).

5        The Bane Act was enacted to stem a tide of hate crimes.  Jones v. Kmart Corp.,

6  17 Cal. 4th 329, 334 (1998).  However, the statutory language does not limit its

7  application to hate crimes.  Venegas v. County of L.A., 32 Cal. 4th 820, 843 (2004).

8  Thus, a defendant is liable if he or she interfered with or attempted to interfere with the

9  plaintiff's constitutional rights by the requisite threats, intimidation, or coercion.  Id.  For

10  the purposes of the Bane Act, the term "threat" means "an 'expression of an intent to

11  inflict evil, injury, or damage to another.'"  McCue v. S. Fork Union Elementary Sch.,

12  766 F. Supp. 2d 1003, 1011 (E.D. Cal. 2011) (citing In re M.S., 10 Cal. 4th 698, 710

13  (1995) (discussing criminal counterpart to section 52.1, Cal. Penal Code § 422.6)).

14  Moreover, subsection (j) provides that "[s]peech alone is not sufficient to support an

15  action brought pursuant to subdivision (a) or (b), except upon a showing that the speech

16  itself threatens violence against a specific person or group of persons . . . ."  Cal. Civ.

17  Code § 52.1(j).  Subsection (j) also provides that "the person or group of persons against

18  whom the threat is directed [must] reasonably [fear] that, because of the speech,

19  violence will be committed against them or their property and that the person threatening

20  violence had the apparent ability to carry out the threat."  Id.

21        In this case, Plaintiff alleges that the actions of Defendant Dedra Bouchard and

22  the "actions/inactions" of Defendant Shelley Noyes violated the Bane Act.  (ECF No. 18

23  at 26.)  Plaintiff alleges that Defendant Bouchard "in her capacity as an interim

24  supervisor for the unit in which Plaintiff was employed, commenced an ongoing series of

25  false disciplinary allegations as against Plaintiff, each of which was directed at the

26  limitations in Plaintiff's employment which had been addressed in Plaintiff's ADA

27  accommodation."  (ECF No. 8.)

28  ///

1    Plaintiff alleges that Defendant Bouchard "threatened termination to Plaintiff in the event

2    of any little mistake, and reminded Plaintiff that Plaintiff had recently been 'written up' for

3    HIPAA violations.  Ms. Bouchard twice told Plaintiff that Plaintiff's continued employment

4    was simply a grievance waiting to happen."  (ECF No. 11 at 34.)  Plaintiff also alleges

5    that Defendant Shelley Noyes was present at a meeting where the president of

6    Defendant Mercy Medical Group stated that supervisors should staff their positions with

7    "'young and cute, pretty and perky' employees in preference to the older, established

8    employees."  (ECF No. 18 at 10.)  Plaintiff states that the Defendants Bouchard and

9    Noyes engaged in nepotism by hiring and promoting children of supervisors.  (ECF

10   No. 18 at 12.)  Plaintiff goes on to allege that Defendants Bouchard and Noyes

11   fabricated the events described in the December 13, 2010, letter, "as a basis for

12   establishing a first level of discipline for the purpose of terminating Plaintiff from her

13   employment."  (ECF No. 18 at 18.)  Plaintiff also alleges that Defendant Noyes knew that

14   Defendant Saechou's allegations against Plaintiff were false, and Defendant Noyes

15   knew these allegations were false, and nonetheless found that these accusations were

16   "good cause" justifying Defendant Noyes' termination of Plaintiff.  (ECF No. 18 at 20.)

17          Thus, a review of Plaintiff's allegations regarding Defendants Noyes reveals

18   absolutely no "threats, intimidation, or coercion" as required by section 52.1.   As to

19   Defendant Bouchard, although Plaintiff alleges that Defendant Bouchard "threatened

20   termination to Plaintiff in the event of any little mistake, and reminded Plaintiff that

21   Plaintiff had recently been 'written up' for HIPAA violations . . ."  (ECF No. 11 at 34),

22   there are no allegations that Defendant Bouchard's speech "itself threatens violence

23   against a specific person or group of persons . . . ."  Cal. Civ. Code § 52.1(j).  Defendant

24   Bouchard's speech possibly is an 'expression of an intent to inflict evil . . . or damage to

25   another," and thus may constitute a "threat."  766 F. Supp. 2d at 1011.  However, this

26   speech is not that which would lead Plaintiff to "reasonably fea[r] that, because of the

27   speech, violence will be committed."  Cal. Civ. Code 52.1(j).

28   ///

1    Accordingly, Plaintiff has failed to state a cause of action pursuant to California

2    Civil Code section 52.1, and Defendants' motion to dismiss this claim is therefore

3    granted.

4

5    **E.    Breach of Contract**

6

7    Plaintiff's ninth claim is for breach of contract against Defendants Dignity Health

8    and MMG.  (ECF No. 18 at 26-27.)  Plaintiff's tenth claim is for breach of contract against

9    Defendants Dignity Health and MMG.  (ECF No. 18 at 28.)  The claims are identical, and

10   it is unclear why Plaintiff has alleged these claims as two separate causes of action.

11   Plaintiff's cause of action for breach of contract was dismissed in the Court's prior order

12   as being preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 195.

13   (ECF No. 12 at 12-15.)  Plaintiff's allegations regarding breach of contract have changed

14   only in that the words "just cause" are now "good cause," and a definition of "good

15   cause" is included.  (ECF No. 18 at 27-28.)  Thus, the Court's analysis below is

16   unchanged from the previous order.

17   Section 301(a) provides federal jurisdiction over "[s]uits for violation of contracts

18   between an employer and a labor organization."  29 U.S.C. § 185(a).  "Section 301

19   creates a federal cause of action for breach of collective bargaining agreements . . .

20   even if brought in state court.  Applying federal law to these cases ensures a uniform

21   interpretation of labor contract terms, a goal the Supreme Court had described as

22   particularly compelling."  Miller v. AT&T Network Sys., 850 F.2d 543, 545 (9th Cir. 1988).

23   To achieve this goal, when a "right is created by state law . . . [but the application of

24   state law] requires the interpretation of a collective-bargaining agreement," the state law

25   claim is preempted by § 301.  Hayden v. Reickerd, 957 F.2d 1507, 1509 (9th Cir. 1992)

26   (quoting Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 413 (1988)).

27   ///

28   ///

1   "The preemptive force of [§] 301 is so powerful as to displace entirely any state claim

2   based on a collective bargaining agreement and any state claim whose outcome

3   depends on analysis of the terms of the agreement."  Young v. Anthony's Fish Grottos,

4   Inc., 830 F.2d 993, 997 (9th Cir. 1987).  However, while "the scope of [§] 301 is

5   'substantial,' [it is] not infinite.  'If a court can uphold state rights without interpreting the

6   [collective bargaining agreement . . . allowing suit based on the state rights does not

7   undermine the purpose of [§] 301 preemption."  Hayden, 957 F.2d at 1509 (quoting

8   Miller, 850 F.2d at 545-46).

9          In this case, Plaintiff specifically alleges that in 2010 and 2011, Plaintiff was a

10  member of the SEIU.  (ECF No. 18 at 27.)  Plaintiff also alleges that the union contract in

11  effect between May 1, 2008 and April 30, 2012, states that "employees may only be

12  disciplined by the employer or terminated by the employer for 'good cause.'"  (ECF

13  No. 18 at 27.)  Finally, Plaintiff alleges that the contract provides procedural safeguards

14  for employees whose conduct warrants discipline.  (ECF No. 18 at 28.)  Plaintiff

15  specifically alleges that Defendants violated these contractual provisions in terminating

16  Plaintiff.  (ECF No. 18 at 28.)  Plaintiff's claim for breach of contract is therefore based

17  on the collective bargaining agreement.  Thus, determining whether Defendants are

18  liable to Plaintiff for breaching the terms of the contract requires analysis of the terms of

19  the collective bargaining agreement.  See Kirton v. Summit Med. Ctr., 982 F. Supp.

20  1381, 1386 (N.D. Cal. 1997) ("The CBA must be interpreted to determine whether

21  Defendants breached the CBA by discharging Plaintiff without good cause . . . .").

22  Accordingly, Plaintiff's claim is pre-empted by § 301.

23         Plaintiff contends that pre-emption by the LMRA does not automatically require

24  dismissal of the action.  (ECF No. 20 at 11.)  Plaintiff cites to § 301 as "provid[ing]

25  unequivocally for suits to be filed in federal court seeking enforcement of a collective

26  bargaining agreement between an employer and employees."  (Id.)  Plaintiff contends

27  that "this supplanting of the state law claim for breach of contract with a federal claim for

28  enforcement of the bargaining agreement is the basis for pre-emption."

17

1    However, in Espinal, the Ninth Circuit clearly states: "[w]here a plaintiff contends

2    that an employer's actions violated rights protected by the [collective bargaining

3    agreement]," the claim is subject to preemption.  90 F.3d 1452, 1456 (9th Cir. 1996).

4    Espinal does state that "where a plaintiff contends that an employer's actions violated a

5    state-law obligation, wholly independent from its obligations under the [collective

6    bargaining agreement], there is no preemption."  Id.  However, in the present case,

7    Plaintiff does not allege that Defendants' actions violated an obligation independent from

8    Defendants' obligations under the collective bargaining agreement.  Rather, Plaintiff

9    specifically alleges that Defendant's conduct violated the contract, which is the collective

10   bargaining agreement.  (See ECF No. 18 at 28, 29.)

11   Likewise, in Cramer, the Ninth Circuit held that an employee's state law claims

12   against an employer is not preempted by § 301 if the claim is unrelated to the terms of

13   the collective bargaining agreement.  Cramer v. Consolidated Freightways, Inc.,

14   255 F.3d 683, 689 (9th Cir. 2001.  "If the plaintiff's claim cannot be resolved without

15   interpreting the applicable [collective bargaining agreement]—as, for example, in Allis-

16   Chalmers, where the suit involved an employer's alleged failure to comport with its

17   contractually established duties—it is preempted."  Id. at 691 (citing Allis-Chalmers

18   Corp. v. Lueck, 471 U.S. 202 (1985)).  Such is precisely the case here—as set forth

19   above, Plaintiff's claim for breach of contract cannot be resolved without interpreting the

20   "just cause" provision of the collective bargaining agreement.  See supra.

21   Plaintiff cites to Young v. Anthony's Fish Grottos, Inc. in support of her contention

22   that her claims for breach of contract are not pre-empted.  (ECF No. 20 at 11.)  However,

23   in Young, the Ninth Circuit explicitly rejected the plaintiff's argument that "her individual

24   labor contract is independent of the [collective bargaining agreement ("CBA")] and that

25   her contract claim is thus not a claim for a breach of the [collective bargaining

26   agreement."  830 F.2d at 997.

27   ///

28   ///

1   The court held that "a suit for a breach of a collective bargaining agreement is governed

2   exclusively by federal law under section 301," and when "the subject matter of [the

3   plaintiff's contract] . . . is a job position covered by the CBA. . . the CBA controls and the

4   contract claim is pre-empted." <u>Id.</u> at 997.  The court reached this conclusion because

5   "any independent agreement of employment concerning [a job position covered by the

6   CBA] could be effective only as part of the collective bargaining agreement," and thus

7   the CBA controls that agreement.  <u>Id.</u> at 997-98.

8        In short, § 301 governs claims for breach of a collective bargaining agreement.

9   Plaintiff's claims for wrongful discharge/ breach of contract are claims for an alleged

10  violation of the collective bargaining agreement.  As such, § 301 preempts these causes

11  of action.  Plaintiff has therefore failed to state a claim upon which relief can be granted,

12  and Defendants' Motion to Dismiss Plaintiff's ninth and tenth causes of action is granted.

13

14        **F.    Breach of the Covenant of Good Faith and Fair Dealing**

15

16        Just as Plaintiff's new allegations regarding the breach of contract claim are

17  insufficient to change the Court's analysis of the matter, so too are Plaintiff's new

18  allegations regarding the breach of the covenant of good faith and fair dealing.  (ECF

19  No. 18 at 30.)

20        The Ninth Circuit has held that claims for breach of an implied covenant are

21  preempted under § 301 where the terms of the collective bargaining agreement

22  encompass the same rights and protections that are alleged to arise from the implied

23  covenant.  <u>See</u> <u>Chmiel v. Beverly Wilshire Hotel Co.</u>, 873 F.2d 1283, 1286 (9th Cir.

24  1989) (finding covenant of good faith and fair dealing claim preempted by collective

25  bargaining agreement containing job security term); <u>Jackson v. S. Cal. Gas Co.</u>,

26  881 F.2d 638, 644–45 (9th Cir. 1989) (same).  "Claims for breach of the implied

27  covenant of good faith and fair dealing are designed to protect the job security of

28  employees who at common law could be fired at will."

1   Kirton, 982 F. Supp. at 1386 n. 1 (quoting Newberry v. Pac. Racing Ass'n, 854 F.2d

2   1142, 1147 (9th Cir. 1988)).  Thus, "[f]or employees covered by a collective bargaining

3   agreement that expressly includes job security and good cause for termination

4   provisions, the express terms prevail and [§] 301 preempts any implied covenant claim."

5   Reagans v. AlliedBarton Sec. Servs., LLC, 12-cv-02190 YGR, 2012 WL 2976766 (N.D.

6   Cal. July 19, 2012); see also Kirton, 982 F. Supp. at 1386 n.1 (citing Newberry, 854 F.2d

7   at 1147).  Specifically, a collective bargaining agreement that "permits discharge for just

8   cause only and provides a grievance procedure to safeguard that right . . . provides

9   comparable job security" such that a claim for breach of the implied covenant of good

10  faith and fair dealing is preempted by § 301.  Kirton, 982 F. Supp. at 1390 n.1.

11      In this case, Plaintiff's eleventh cause of action for breach of the implied covenant

12  of good faith and fair dealing concerns that are directly addressed by the collective

13  bargaining agreement: termination and good cause.  (See ECF No. 18 at 30-31.)

14  Plaintiff specifically alleges that the collective bargaining agreement covers employee

15  discipline and discharge, that the collective bargaining agreement permitted discharge

16  only for just cause (ECF No. 18 at 27), and that there were procedural safeguards in

17  place (ECF No. 18 at 28).  Thus, the terms of the collective bargaining agreement

18  provide comparable job security terms to that of a claim for breach of the covenant of

19  good faith and fair dealing.  Cf. Kirton, 982 F. Supp. at 1390 n.1.  Plaintiff's claim for

20  breach of the implied covenant is therefore preempted by § 301.

21      As such, Plaintiff has failed to state a claim upon which relief can be granted, and

22  Defendants' motion to dismiss this cause of action is granted.

23  ///

24  ///

25  ///

26  ///

27  ///

28

1

## CONCLUSION

2

3        For the reasons set forth above, Defendants' Motion to Dismiss Plaintiff's fifth,

4  sixth, seventh, eighth, ninth, tenth and eleventh causes of action is GRANTED WITH

5  FINAL LEAVE TO AMEND as to all Defendants.

6        If no amended complaint is filed within twenty (20) days of the date of this order,

7  the causes of action dismissed by this order shall be dismissed with prejudice.

8        IT IS SO ORDERED.

9  DATED:  MAY 23, 2013

10

11

12  MORRISON C. ENGLAND, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28