UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

LINDA M. SCHALDACH, fka LINDA M. LOWRY,

               Plaintiff,

    v.

DIGNITY HEALTH, et al.,

               Defendants.

No.  2:12-cv-02492-MCE-KJN

**MEMORANDUM AND ORDER**

Plaintiff Linda M. Schaldach ("Plaintiff") brought this action against Defendants Dignity Health, Mercy Medical Group[1] ("Mercy"), Dedra Bouchard, Shelly Noyes, and A.C. Saechou (collectively, "Defendants") seeking redress for alleged violations of state and federal law related to Plaintiff's termination from employment with Dignity Health. Second Am. Compl., June 12, 2013, ECF No. 24.

///

///

///

///

///

---

[1] Defendants state that Dignity Health Medical Foundation was erroneously sued as Mercy Medical Group.  Plaintiffs state that Mercy Medical Group is a wholly owned subsidiary of Dignity Health, and is also known as Dignity Medical Group.  Mot. at 2.

Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint ("Motion") as to the fifth, sixth, and seventh claims for relief pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.[2]  Mot., June 28, 2013, ECF no. 25.  For the reasons set forth below, the Motion is denied.[3]

## BACKGROUND[4]

Plaintiff began working as a medical assistant for Dignity Health[5] in October 1988, at a clinic located in Sacramento, California.  In December 2000, Plaintiff accepted a medical assistant position with Dignity Health at a clinic located in Carmichael, California.

In March 2004, Plaintiff submitted an Americans with Disabilities Act ("ADA") request for accommodation, due to physical illness, to Dignity Health's Human Resource Department.  In March 2005, Dignity Health granted Plaintiff's request for accommodation, and Plaintiff and Dignity Health agreed that Plaintiff would transfer to a medical office receptionist position.  As a result, Plaintiff would be allowed to work reduced hours in the new position.  Plaintiff transferred positions, and was thus afforded the ADA accommodation, in April 2005.  The accommodation was reaffirmed in March 2011, following an updated review of Plaintiff's medical condition in February 2011.

///

///

---

[2] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

[3] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Cal. Local Rule 230(g).

[4] The following facts are taken, sometimes verbatim, from Plaintiff's Second Amended Complaint, unless otherwise noted.  ECF No. 24.

[5] Dignity Health was formerly known as Catholic Healthcare West.

1    A meeting was held in 2008 with the supervisors of various clinics, including

2    Noyes.  At the 2008 meeting, Dag Jacobsen, then president of Mercy, informed the

3    supervisors that they should staff positions with "young and cute, perky and pretty"

4    employees in preference to older, established employees.  As a result, around

5    September or October of 2010, Bouchard, an interim supervisor for the unit in which

6    Plaintiff was employed, began transferring younger employees to the medical clinic

7    where Plaintiff was employed.

8    Additionally, in August 2010, Bouchard began a series of false disciplinary

9    allegations against Plaintiff, directed at the limitations in Plaintiff's employment, which

10   had been addressed in Plaintiff's ADA accommodation.  Bouchard also belittled Plaintiff

11   in front of her co-workers, demonstrating hostility towards Plaintiff's medical condition

12   and ADA accommodation.  Plaintiff filed a grievance against Bouchard for the harassing

13   behavior.  At the grievance hearing, Saechou refused to believe Plaintiff's allegations,

14   and insisted Plaintiff simply misunderstood Bouchard.  Plaintiff alleges Defendants

15   retaliated against her, culminating in her termination, for filing this grievance.

16   In October and November 2010, Noyes compiled a list of employees to be

17   terminated.  Plaintiff's name was on the list, as were other medical or Family Leave Act

18   qualified employees, who had generally been employed for long periods of time with

19   Dignity Health.  As these employees were terminated, younger employees filled the

20   open positions.  Many of the younger employees were children of supervisors employed

21   at Mercy San Juan Medical Clinic.  While older employees were disciplined for violations

22   of workplace rules and regulations, younger employees were not.

23   On November 16, 2010, Saechou interrogated Plaintiff about an incident involving

24   Plaintiff's then-incapacitated adult son, who was a Mercy clinic patient.  Saechou

25   accused Plaintiff of improperly accessing patient medical files and discussing and

26   disclosing private health information with an individual who was not entitled to know such

27   information, in violation the Human Information Privacy and Portability Act ("HIPPA").

28   Both of these accusations were grounds for discipline.

1     After the interrogation, Saechou issued a disciplinary letter on December 13,

2  2010, falsely accusing Plaintiff of improperly accessing patient records.  The following

3  day, Plaintiff contacted Saechou and requested a full investigation of the accusations

4  contained in the disciplinary letter.  Saechou informed Plaintiff that the violations were a

5  complaint from the medical provider himself, and because Plaintiff could be summarily

6  terminated for such violations, Plaintiff would be better served by saying nothing adverse

7  to the content of the letter.

8     Nearly a year later, on November 17, 2011, Plaintiff learned that these

9  accusations had been fabricated by Saechou to establish a first level of discipline, to

10  begin the process of terminating Plaintiff.

11     In December 2010, Plaintiff applied to transfer to a position as a referral

12  department clerk.  Had Plaintiff transferred to the new position, she would have received

13  a pay raise and a new job classification.  Plaintiff's prior training and work experience

14  qualified her for this position.  In January 2011, Bouchard and Shelley Wilson

15  interviewed Plaintiff for the position.  During the interview, Bouchard threatened to

16  terminate Plaintiff for any small mistake, and twice told Plaintiff that her employment was

17  a grievance waiting to happen.  Wilson and Bouchard implied that Plaintiff was not

18  wanted as a referral department clerk.  Shortly thereafter, a younger employee, who was

19  a child of a clinic supervisor, was promoted to that position.

20     In June 2011, Saechou again accused Plaintiff of violating HIPPA and the

21  Network Usage Policy.  These accusations related to Plaintiff making an appointment

22  and taking a personal message for Plaintiff's father, who was a Dignity Health patient.

23  When Plaintiff denied these accusations, Saechou told Plaintiff that there would be a full

24  investigation.  However, no investigation ever took place.

25     As a result of Bouchard and Saechou's false accusations, Plaintiff was terminated

26  from her position on July 28, 2011.

27  ///

28  ///

4

1

2

**STANDARD**

3      On a motion to dismiss for failure to state a claim under Federal Rule of Civil

4   Procedure 12(b)(6), all allegations of material fact must be accepted as true and

5   construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins.

6   Co., 80 F.3d 336,337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and plain

7   statement of the claim showing that the pleader is entitled to relief" in order to "give the

8   defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell

9   Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41,

10   47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require

11   detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of

12   his entitlement to relief requires more than labels and conclusions, and a formulaic

13   recitation of the elements of a cause of action will not do."  Id. (internal citations and

14   quotations omitted).  A court is not required to accept as true a "legal conclusion

15   couched as a factual allegation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009)

16   (quoting Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a

17   right to relief above the speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles

18   Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)

19   (stating that the pleading must contain something more than "a statement of facts that

20   merely creates a suspicion [of] a legally cognizable right of action.")).

21      Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket

22   assertion, of entitlement to relief."  Twombly, 550 U.S. at 556 n.3 (internal citations and

23   quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard

24   to see how a claimant could satisfy the requirements of providing not only 'fair notice' of

25   the nature of the claim, but also 'grounds' on which the claim rests."  Id. (citing 5 Charles

26   Alan Wright & Arthur R. Miller, supra, at § 1202).  A pleading must contain "only enough

27   facts to state a claim to relief that is plausible on its face."  Id. at 570.

28   ///

1  If the "plaintiffs . . . have not nudged their claims across the line from conceivable to

2  plausible, their complaint must be dismissed."  Id.  However, "[a] well-pleaded complaint

3  may proceed even if it strikes a savvy judge that actual proof of those facts is

4  improbable, and 'that a recovery is very remote and unlikely.'"  Id. at 556 (quoting

5  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

6       A court granting a motion to dismiss a complaint must then decide whether to

7  grant leave to amend.  Leave to amend should be "freely given" where there is no

8  "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice

9  to the opposing party by virtue of allowance of the amendment, [or] futility of the

10  amendment . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.

11  Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to

12  be considered when deciding whether to grant leave to amend).  Not all of these factors

13  merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . .

14  carries the greatest weight."  Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,

15  185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that

16  "the complaint could not be saved by any amendment."  Intri-Plex Techs. v. Crest Group,

17  Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006,

18  1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir.

19  1989) ("Leave need not be granted where the amendment of the complaint . . .

20  constitutes an exercise in futility . . . .")).

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

6

**ANALYSIS**[6]

### A. Fifth Claim for Relief: Wrongful Termination – Age Discrimination in Violation of FEHA

Defendants contend that Plaintiff's fifth claim for relief, wrongful termination based on age discrimination pursuant to California's Fair Employment and Housing Act ("FEHA"), should be dismissed because it is duplicative of Plaintiff's third claim for relief, wrongful termination in violation of FEHA. Although the headings for the two claims are almost identical, it is clear they pertain to different facts, and are therefore independent of each other.

It is well settled that a plaintiff may bring separate claims for disability discrimination and age discrimination under FEHA, and such claims need not be condensed into a single cause of action. See, e.g., Sandell v. Taylor-Listug, Inc., 188 Cal. App. 4th 297, 206 (2010) (recognizing separate claims for disability discrimination and age discrimination); Raine v. City of Burbank, 135 Cal. App. 4th 1215, 1219 (2006) (alleging claims for disability discrimination and age discrimination). Indeed, claims for disability discrimination and age discrimination require different evidence. A prima facie case for disability discrimination under FEHA requires Plaintiff to show that she: "(1) suffered from a disability; (2) was otherwise qualified to do h[er] job; and (3) was subjected to adverse employment action because of h[er] disability." Klein v. Raytheon Co., No. CV 08-6461CAS (CWx), 2009 WL 3672520, *8 (C.D. Cal. Nov. 2, 2009). By contrast, establishing a prima facie case for age discrimination under FEHA requires Plaintiff to show that she: "(1) was a member of the protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was replaced by a significantly younger person." Id. at *9.

///

---

[6] Plaintiff submitted her opposition to this motion one day late. Due to the late filing, Defendants objected to Plaintiff's participation in oral argument. Since oral argument was not heard, Defendants' objection to Plaintiff's participation is moot.

1    Here, while the third claim for relief states that FEHA prohibits an employer from
2    discriminating against an employee on the basis of "disability, medical condition, or age,"
3    the thrust of this claim is disability discrimination.  The factual allegations supporting this
4    claim relate only to Defendants' alleged discrimination against Plaintiff on the basis of
5    her disability.  The claim discusses Plaintiff's ADA accommodations, as well as the
6    supervisors' list of employees to be terminated—many of whom had ADA
7    accommodations.  This cause of action thus alleges Plaintiff was terminated because of
8    her disability.  The third claim for relief contains no factual allegations regarding age
9    discrimination.

10    By contrast, the fifth claim for relief exclusively refers to a FEHA violation based
11    on age discrimination, and delineates the specific prohibition on discriminating against
12    employees over forty years old.  The fifth claim specifically alleges that Plaintiff falls into
13    that protected class.  That claim alleges that Plaintiff was terminated because she is a
14    member of that protected class, and Defendants hired "young, cute[,] pretty and perky"
15    people in her stead.

16    As such, the third cause of action states a claim for wrongful termination due to
17    disability discrimination in violation of FEHA, while the fifth cause of action states a claim
18    for wrongful termination due to age discrimination in violation of FEHA.  Because these
19    claims are different and distinct, Defendants' Motion to dismiss the fifth cause of action is
20    DENIED.

21    ///
22    ///
23    ///
24    ///
25    ///
26    ///
27    ///
28    ///

8

1

2

**B.      Sixth Claim for Relief: Wrongful Termination – Harassment**

3       Defendants contend that Plaintiff's sixth claim for relief fails because the alleged

4    harassment constituted official employment actions.  Defendants are mistaken.  Under

5    FEHA, it is unlawful for an employer or any other person "to harass an employee"

6    because of age or physical disability.  Cal. Gov. Code § 12940(j)(1).  "Discrimination

7    claims" and "harassment claims" are distinct under FEHA.  Miller v. Dep't of Corr., 36

8    Cal.4th 446, 461 n.5 (2005); Reno v. Baird, 18 Cal.4th 640, 645-46 (1998); Janken v.

9    GM Hughes Elec., 46 Cal. App. 4th 55, 63 (1996).

10       "To prevail on a hostile work environment claim under California's FEHA, an

11   employee must show that the harassing conduct was 'severe enough or sufficiently

12   pervasive to alter the conditions of employment and create a work environment that

13   qualifies as hostile or abusive to employees . . . .'"  Hughes v. Pair, 46 Cal.4th 1035,

14   1043 (2009) (quoting Miller, 36 Cal.4th at 462); see Meritor Savings Bank v. Vinson, 477

15   U.S. 57, 67 (1986) (harassment must be sufficiently severe and pervasive "to alter the

16   conditions of [the victim's] employment and create an abusive working environment");

17   Fisher v. San Pedro Peninsula Hosp., 214 Cal. App. 3d 590, 608 (1989).

18       "[H]arassment focuses on situations in which the social environment of the

19   workplace becomes intolerable because the harassment (whether verbal, physical, or

20   visual) communicates an offensive message to the harassed employee."  Roby v.

21   McKesson Corp., 47 Cal.4th 686, 706 (2009).  "[H]arassment includes, but is not limited

22   to, verbal epithets or derogatory comments, physical interference with freedom of

23   movement, derogatory posters or cartoons, and unwanted sexual advances."  Janken,

24   46 Cal. App. 4th at 63.

25   ///

26   ///

27   ///

28   ///

1   "Harassment is not conduct of a type necessary for management of the employer's

2   business or performance of the supervisory employee's job."  Reno, 18 Cal.4th at 646;

3   Thompson v. City of Monrovia, 186 Cal. App. 4th 860, 879 (2010); Janken, 46 Cal. App.

4   4th at 63.  When evaluating whether harassment exists, courts look to the totality of the

5   circumstances.  Brooks v. City of San Mateo, 229 F.3d 917, 923 (9th Cir. 2000).

6          Defendants argue that many of the allegations regarding harassment were

7   employment actions and do not support a claim for harassment.  However, "official

8   employment actions" can be considered as part of the conduct supporting a harassment

9   claim when the actions convey an offensive and hostile message to the employee.

10   Roby, 47 Cal.4th at 708.  Roby confirms the decisions in Reno and Janken, which

11   created the general rule that necessary personnel management actions based on

12   discriminatory motives are remedied by FEHA claims for discrimination rather than

13   harassment.  Id. at 707.  But Roby also recognized that "although discrimination and

14   harassment are separate wrongs, they are sometimes closely interrelated, and even

15   overlapping, particularly with regard to proof."  Id.

16          "[H]arassment is generally concerned with the message conveyed to an

17   employee, and therefore with the social environment of the workplace."  Roby, 47 Cal.

18   4th at 708 (emphasis in original).  However, "some official employment actions done in

19   furtherance of a supervisor's managerial role can . . . have a secondary effect of

20   communicating a hostile message.  This occurs when the actions establish a widespread

21   pattern of bias."  Id. at 709 (citing Miller, 26 Cal.4th at 466).  Additionally, if the finder of

22   fact determines that the employment actions were motivated by discrimination, those

23   actions can be used to establish "discriminatory animus on the part of the manager

24   responsible for the discrimination, thereby permitting the inference that rude comments

25   or behavior by that same manager was similarly motivated by discriminatory animus."

26   Id.

27   ///

28   ///

1   As such, "discrimination and harassment claims can overlap as an evidentiary matter."

2   Id.  While "FEHA treats discrimination and harassment as distinct categories, . . .

3   nothing . . . requires that the evidence in a case be dedicated to one or the other claim

4   but never to both."  Id. at 710.

5          To survive a Rule 12(b)(6) motion, a complaint need contain "only enough facts to

6   state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.

7   Additionally, the court must accept the allegations as true and construe them in the light

8   most favorable to the nonmoving party.  Cahill, 80 F.3d at 337-38.  In viewing the

9   allegations of the Second Amended Complaint in the light most favorable to Plaintiff, and

10  considering the totality of the circumstances, the allegations are sufficient to push

11  Plaintiff's claim for harassment "across the line from conceivable to plausible."  Id. at

12  570.

13         That is, based on the allegations in Plaintiff's complaint, it is plausible that

14  Defendants, acting in their official capacities, engaged in a pattern of discriminatory

15  actions which sent a message to the work force that older employees were not valued

16  and would be systematically replaced by younger workers.  This pattern started with the

17  message from the President to supervisors to hire "young," "cute," and "perky"

18  employees, and continued with the systematic efforts to terminate older employees and

19  replace them with young people.  From the allegations that Defendants discriminated

20  against Plaintiff based on her age and disability and in light of the liberal pleading

21  standard, the Court may reasonably infer that Defendants' hostility towards Plaintiff was

22  also based on her age and disability, thus constituting harassment in violation of FEHA.

23  Cf. Roby, 47 Cal. 4th at 711.  Accordingly, Plaintiff has successfully stated a claim for

24  harassment against Saechou, Noyes, and Bouchard.

25  ///

26  ///

27  ///

28  ///

1    Additionally, the individual Defendants were functioning in their official capacity

2    and were supervisors when they engaged in the allegedly harassing conduct.  It is

3    undisputed that an employer is liable for harassing conduct by supervisory employees in

4    the course of their employment.  <u>See</u> <u>Carrisales v. Dep't of Corr.</u>, 21 Cal.4th 1132, 1136

5    (2006) (abrogated on other grounds by statute).  Thus, because Plaintiff successfully

6    states a claim for harassment against Saechou, Noyes, and Bouchard, Plaintiff also

7    successfully states a claim against their employers, Dignity Health and Mercy.

8    Therefore, Defendants' Motion as to the sixth claim for relief is DENIED as to all

9    Defendants.

10

11    **C.    Seventh Claim for Relief: Wrongful Termination – Retaliation**

12

13    Section 12940(h) of the California Government Code makes it an unlawful

14    employment practice to "discriminate against any person because the person has

15    opposed any practices forbidden under this part or because the person has filed a

16    complaint, testified, or assisted in any proceeding under this part."  <u>Doe v. City of San</u>

17    <u>Francisco</u>, 835 F. Supp. 2d 762, 772 (N.D. Cal. 2011).

18    To establish a prima facie case of retaliation under FEHA, a plaintiff must show

19    that: "(1) she engaged in a protected activity; (2) she suffered an adverse employment

20    action; and (3) a causal link existed between the protected activity and the adverse

21    employment action."  <u>Leramo v. Premier Anesthesia Med. Grp.</u>, 2:09-cv-02083 LJO JTL,

22    2011 WL 2680837, *16 (E.D. Cal. July 8, 2011) (citing <u>Morgan v. Regents of Univ. of</u>

23    <u>Cal.</u>, 88 Cal. App. 4th 52, 69 (2000)).

24    ///

25    ///

26    ///

27    ///

28    ///

1    Plaintiff alleges that she was retaliated against for filing complaints and

2  grievances against Bouchard.  Defendants assert that Plaintiff cannot establish a prima

3  facie case for relation because these complaints were not protected acts.  However,

4  because Plaintiff complained that Bouchard harassed Plaintiff about her disabilities, and

5  thus her complaints "protest[ed] [the] unlawful employment practice" of harassment

6  based on a disability, those complaints are a "protected activity."  Peralta v. City and

7  County of San Francisco, 427 Fed. App'x 616, 617 (9th Cir. 2011); see also Day v.

8  Sears Holdings Corp., 930 F. Supp. 2d 1146, 1176 (C.D. Cal. March 13, 2013) ("State

9  and federal courts in California have found that the following are protected activities

10  under FEHA: (1) filing an administrative complaint or grievance; (2) making informal

11  complaints to supervisors . . . .").  After the hearing, Plaintiff suffered an adverse

12  employment action in the form termination.  Thus, Plaintiff sufficiently alleges the first two

13  elements of a prima facie case.

14    Plaintiff also alleges that her termination was a direct result from the protected act

15  of filing a complaint.  To support this contention, Plaintiff alleges that Saechou took

16  Bouchard's side during the grievance hearing and claimed Plaintiff merely

17  misunderstood Bouchard.  Saechou's behavior, along with the timing of the subsequent

18  allegedly false complaint against Plaintiff, and Plaintiff's ultimate termination, suggest a

19  causal link between Plaintiff's protected activity, the subsequent hearing, and the

20  adverse employment action.

21    Accordingly, Plaintiff has successfully pled all the elements required for a

22  retaliation claim under FEHA.  Defendants' Motion to dismiss the seventh claim for relief

23  is therefore DENIED.

24  ///

25  ///

26  ///

27  ///

28  ///

1

**CONCLUSION**

2

3        For the reasons stated above, Defendants' Motion to Dismiss (ECF No. 25) is

4   DENIED.

5   Dated:  December 6, 2013

6

7

8                                        _____
                                         MORRISON C. ENGLAND, JR, CHIEF JUDGE
9                                        UNITED STATES DISTRICT COURT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14